UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DANNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4: 18 CV 1149 RWS |
| | ) | |
| SAFECO INS. CO. OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Defendant Safeco insured two automobiles (a Lexus and a Ford Escape) for

plaintiff James Danner and his wife.  The policy included underinsured motorist

(UIM) coverage.  On November 26, 2016, James Danner was driving the Ford

Escape when he was struck by a vehicle driven by Marilyn Jackson.  He suffered

substantial injuries.  Jackson, the at-fault driver, had an automobile insurance

policy with a policy limit of $100,000, and her insurance company settled with

Danner for the full amount.

Danner now seeks to recover additional amounts from Safeco under the UIM

provision of his own insurance policy.  He brings claims for breach of contract and

vexatious refusal to pay.  Before me now is Safeco's motion for partial summary

judgment.  Because Danner is not entitled to "stack" the UIM coverage for both

vehicles under the unambiguous language of his insurance policy, Safeco is entitled to partial summary judgment on the issue of stacking.

## Standards Governing Summary Judgment

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

## Relevant, Undisputed Background Facts

Safeco issued a personal automobile policy to Danner for coverage of a 2011 Lexus RX 350 and a 2011 Ford Escape (Insurance Policy Number Z4622739) with effective dates of May 1, 2016 through May 1, 2017. The policy has UIM

coverage limits of $100,000 for "each person" and $300,000 for "each accident."

The policy states as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**: 1. sustained by that **insured**; and 2. Caused by an accident.  The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

[Doc. #4-1 at 49] (emphasis in original).  The policy defines "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for bodily injury is not enough to pay the full amount the insured is legally entitled to recover as damages."  [Doc. # 4-1 at 50].  The policy contains the following Two or More Autos Insured provision:

> If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.  In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured.

[Doc. # 4-1 at 49].

The "Limits of Liability" provision states as follows:

> A. The limit of liability shown in the Declarations for "each person" for Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations page for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:
1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

If more than one vehicle is insured under this policy, or if more than one policy issued to the insured applies to the same accident, the limits applicable to Underinsured Motorists Coverage may not be stacked.

[Doc. # 4-1 at 51] (emphasis in original).

The policies also contain the following language with respect to Other

Insurance:

If there is other applicable underinsured motorist insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of underinsured motorist coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage on either a primary or excess basis.

2. Any underinsured motorist insurance we provide with respect to a vehicle you do not own shall be excess over any collectible underinsured motorist insurance providing coverage on a primary basis. However, the maximum limit shall not exceed the highest limit applicable to any one auto.

[Doc. # 4-1 at 52].

Danner contends that his damages arising out of the accident exceed

$300,000. The at-fault driver had an insurance policy covering the accident with a

policy limit of $100,000, and her insurance company paid the full policy limit to Danner in settlement of his claim. Danner then demanded an additional $200,000 in damages from Safeco under the UIM provision of his policy, arguing that he is entitled to stack the UIM coverage of $100,000 for both vehicles under the policy for a total amount of coverage of $200,000. Safeco denied his request to stack the UIM provisions of the policy and instead offered him $2,000 in settlement of his claim, prompting Danner to file his claims for breach of the insurance contract and vexatious refusal to pay in state court. Safeco properly removed Danner's state-court petition to this Court, citing diversity jurisdiction. *See* 28 U.S.C. § 1332. Safeco now moves for partial summary judgment on this issue of whether Danner is entitled to "stack" the UIM provisions of his insurance policy as a matter of law.

Discussion

Because this is a diversity case, I apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties agree that Missouri law controls.

In Missouri, there is no statutory requirement that an automotive insurance contract contain UIM coverage, so its existence is determined by the contract entered into between the parties. *Rodriguez v. General Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. banc 1991). Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v.*

*Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *see also Rodriguez*, 808 S.W.2d at 383.

If ambiguity exists, the court interprets the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quoting *Seeck*, 212 S.W.3d at 132). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). Courts must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . ." *Seeck*, 212 S.W.3d at 132 (internal quotations and citations omitted). "'A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning.'" *Gohagan v.*

*Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

Danner contends that he should be able to stack the UIM coverage of his two vehicles, such that his UIM coverage limit is really $200,000, not $100,000. "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999). As with the existence of UIM coverage, "its ability to be stacked [is] determined by the contract entered between the insured and the insurer." *Rodriguez*, 808 S.W.2d at 383. "Consequently, general rules of contract construction apply, and the key question is whether the policy unambiguously prohibits stacking or is reasonably open to different constructions as to the permissibility of stacking. If the former is true, [I] must enforce the contract to prohibit stacking; if the latter is true, the policy is ambiguous and [I] must construe the policy to permit stacking." *Midwestern Indemnity Co. v. Brooks*, 779 F.3d 540, 545 (8th Cir. 2015) (internal quotation marks and citations omitted). To create an ambiguity, however, the plain language

of an anti-stacking provision "must be offset by another provision appearing to authorize stacking." *Id.* at 546 (internal quotation marks and citation omitted).

Here, Danner's policy contains three unambiguous anti-stacking provisions. First, the Limit of Liability provision states that the limit shown on the Declarations page for "each person" is the "maximum limit of liability for all damages for **bodily injury** resulting from any one accident. This is the most we will pay regardless of the number of . . . Vehicles or premiums shown in the Declarations." [Doc. # 4-1 at 51]. It is undisputed that the maximum limit for UIM coverage for "each person" on the insurance policy is $100,000. The same provision of the policy goes on to state that "[**i]f more than one vehicle is insured under this policy**, or if more than one policy issued to the insured applies to the same accident, **the limits applicable to Underinsured Motorists Coverage may not be stacked.**" [Doc. # 4-1 at 51]. Similarly, the Other Insurance clause makes clear that any recovery of UIM benefits cannot exceed the "highest applicable limit for any one vehicle under any insurance" and that "the maximum limit of our liability shall not exceed the highest limit applicable to any one auto." [Doc. # 4-1 at 52]. Finally, the policy's Two or More Autos Insured provision clearly prohibits stacking as follows: "If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.

**In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured."** [Doc. # 4-1 at 49]. The unambiguous language of the policy clearly provides that stacking of UIM coverage is prohibited. The unambiguous provisions of the policy must be enforced as written and preclude stacking as a matter of law.

Danner argues that the policy language is ambiguous when read in conjunction with the Other Insurance clause and should therefore be construed in favor of stacking. Danner argues that the Other Insurance section of his policy should be read to authorize stacking because its language is "almost identical" to the language in *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). In *Ritchie*, the Missouri Supreme Court determined that the other insurance provision in the insured's policy permitted stacking "in the special situation where the insured is injured while occupying a non-owned vehicle." *Id.* (internal quotation marks and citation omitted). Such is not the case here, where Danner was injured while driving his own automobile. Moreover, there is no ambiguity created by the Other Insurance clause in this case because it includes additional language not found in the *Ritchie* policy, namely that coverage will not "exceed the highest applicable limit for any one vehicle under any insurance providing underinsured motorist coverage or either a primary or excess basis."

This language prohibits, not authorizes, stacking, given its limitation of the liability

amount to that of "any one vehicle." *See Hammontree v. Safeco Ins. Co. of

Illinois*, 2016 WL 6871274, at *5 (W.D. Mo. Nov. 21, 2016). This interpretation is

consistent with the Limits of Liability and the Two or More Autos Insured

provisions of the policy, which must be construed as a whole. *See Todd*, 223

S.W.3d at 163. Danner's interpretation of the Other Insurance provision as

permitting him to collect $100,000 in UIM benefits as primary coverage and then

another $100,000 in UIM benefits as excess coverage is not supported by any other

language of the policy, which unambiguously precludes stacking, or the language

of the Other Insurance provision itself, which limits "any" recovery to the highest

applicable limit "for any one vehicle" on "either a primary or excess basis."

Danner's argument that the Other Insurance provision is difficult for an ordinary

person to understand does not render it ambiguous under Missouri law. *National

Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune*, 277 S.W.3d 754, 760 (Mo. Ct.

App. 2009).

     For these reasons, Danner may not stack his underinsured motorist coverage

as a matter of law.

     Accordingly,

**IT IS HEREBY ORDERED** that the motion for partial summary judgment

[15] is granted.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 24th day of May, 2019.